UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO: 7:13-CV-00094-BR

| | | |
|---|---|---|
| FAISAL ISMAIL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| v. | ) | |
| | ) | |
| UNITED TRANSPORTATION UNION, CSX | ) | |
| TRANSPORTATION, INC., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the motions for summary judgment, (DE ## 41, 43), filed by defendants CSX Transportation, Inc., ("CSXT"), and United Transportation Union, ("UTU"), plaintiff's motions to dismiss, (DE ## 56, 59), plaintiff's motion for extension of time to respond to defendants' reply briefs, (DE # 66), and CSXT's motion to strike plaintiff's response, (DE # 69). The issues raised have been fully briefed and are now ripe for disposition.

## I. FACTS

Plaintiff, who is an Arab Muslim of Palestinian descent, has been employed by CSXT, as a train conductor since 2008 and remains so employed. (Ismail Dep., DE # 44-2, at 46, 125-26.) He was initially assigned to work at CSXT's sub-district in Hamlet, North Carolina. (Id. at 48.) In June 2011, plaintiff voluntarily transferred to CSXT's sub-district in Wilmington, North Carolina.[1] (Id. at 64-65.)

At the time of his transfer to Wilmington, plaintiff was aware that the collective bargaining agreement ("CBA") between CSXT and UTU required a voluntary transferee to

---

[1] CSXT's procedures permit a conductor with the requisite level of seniority to transfer to another sub-district at his discretion. (Def.'s Mem. Supp. Mot., Ex. B, DE # 42-5, at 3.)

"qualify" as a conductor in his new sub-district on his own time without pay.[2] (Id. at 65-66.) In order to "qualify," a conductor must take "at least one trip" on each of the lines of road within the territory with a more experienced conductor. (Def.'s Mem. Supp. Mot., Ex. D, DE # 42-7, at 1.) The CSXT training agreement indicates that "[t]he number of trips required on a train, . . . will be determined by the transportation manager and will take into consideration whether the territory over which the person is being trained demands greater knowledge than the conductor has experienced in the past." (Id.)

On 8 August 2011, plaintiff sent an email to CSXT's Division Manager, Jermaine Swafford, entitled "Discrimination in Wilmington." (Def.'s Mem. Supp. Mot., Ex. C, DE # 42-6.) In the email, plaintiff stated that he had been wrongfully denied payment while qualifying in Wilmington. (Id. at 4.) He also claimed that he was required to spend a substantially longer time in qualifying status than newly-hired conductors despite him having more experience as a conductor. (Id.) Plaintiff identified CSXT Trainmasters Herbert Smalls and Donald Joyner, along with UTU's Local Chairman Todd McCrary, as the individuals who were "making it so hard for [him] to finish [his] qualifying and mark up." (Id. at 5.) Specifically, plaintiff noted that Smalls had failed to provide him with a qualifying schedule or program, and had repeatedly failed to return his calls and text messages concerning the qualification process. (Id. at 3-4.) Approximately 20 minutes after plaintiff sent this email to Swafford, Smalls contacted plaintiff via telephone and informed him that he had finished qualifying on the tracks within Small's section of the territory. (Ismail Dep., DE # 44-2, at 77.)

Subsequently, on 29 August 2011, plaintiff met with Swafford, CSXT Division Manager Bill Setser, Smalls, and McCrary to discuss his discrimination claims and overall concerns about

---

[2] CBA Article 22, Section C provides that "[t]rainmen who voluntarily exercise seniority from one sub-district/district to another will not receive pay for learning the road and will be required to qualify on their own time." (Def.'s Mem. Supp. Mot., Ex. B, DE # 42-5, at 3.)

2

the qualification process. (Id. at 61, 146-47; McCrary Declr., DE # 42-8, at 2.) At the meeting, Swafford concluded that the CBA was appropriately applied to plaintiff when he voluntarily transferred to Wilmington, that there could have been a communication issue between plaintiff and Smalls, and that no discrimination took place. (McCrary Declr., DE # 42-8, at 3.) With regard to plaintiff's qualifying status, Setser noted that even though plaintiff had qualified on the tracks within Small's section of the territory, he had yet to finish qualifying on the grain trains within Joyner's section of the territory. (Setser Declr., DE # 44-6, at 5-6.) Setser identified the grain trains plaintiff still needed to work and determined that if plaintiff was called to work on a grain train, he could take the job and qualify on that train, with pay, so long as he was accompanied by a qualified conductor to serve as pilot. (Id. at 6; Ismail Dep., DE # 44-2, at 111, 148.)

On 1 September 2012, plaintiff filed a discrimination charge against CSXT and United Transportation Union Local 1105, ("UTU Local 1105"), with the Equal Opportunity Commission ("EEOC"), alleging discrimination based on race, religion, national origin, as well as retaliation.[3] (DE # 42-9.) In his charge, plaintiff stated that he had been "denied assignment, not paid for training completed, and made to qualify for work for which others have not," and that "the union has failed to represent [him] in a diligent fashion." (Id.) On 28 January 2013, the EEOC issued plaintiff a Notice of Rights to Sue. (DE # 42-11.) Plaintiff filed this action on 8 May 2013.

## II. DISCUSSION

Plaintiff alleges that CSXT discriminated against him on the basis of his race, color, religion, and national origin in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, ("Title VII"), and 42 U.S.C. § 1981. In addition, plaintiff claims that

---

[3] Plaintiff does not raise a retaliation claim in his complaint.

CSXT subjected him to a hostile work environment in violation of 42 U.S.C. § 1981. Plaintiff also alleges that UTU discriminated against him because of his race, color, religion, and national origin in violation of Title VII.

**A. Summary Judgment Motions**

**1. Standard of Review**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering a motion for summary judgment, the court must view the facts and all reasonable inferences in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).

Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). "The nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment." Coleman v. United States, 369 F. App'x 459, 461 (4th Cir. 2010) (citing Baber v. Hosp. Corp. of Am., 977 F.2d 872, 875 (4th Cir. 1992)). The party asserting that a fact cannot be or is genuinely disputed must cite to particular materials in the record, including depositions, documentary evidence, affidavits and declarations. Fed. R. Civ. P. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

**2. CSXT's Motion for Summary Judgment**

 **i. Discrimination Claims (Counts 1 and 3-7)**

Plaintiff alleges that CSXT violated Title VII and section 1981 by discriminating against him on the basis of his race, color, religion, and national origin. Title VII makes it an "unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Similarly, section 1981 outlaws discrimination in the making and enforcement of private contracts. 42 U.S.C. § 1981. Under either Title VII or section 1981, a plaintiff may establish a claim for intentional discrimination through direct proof of discrimination or through application of the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004).

In this case, plaintiff presents no direct evidence of discrimination. Thus, the court analyzes his claims under the burden-shifting framework established in McDonnell Douglas. To establish a prima facie case of discrimination, plaintiff must show: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) that similarly situated employees outside the protected class received more favorable treatment. Coleman v. Md. Ct. of App., 626 F.3d 187, 190 (4th Cir. 2010); see also Love-Lane, 355 F.3d at 786 (recognizing that the elements to establish a Title VII claim and section 1981 claim are the same). If plaintiff establishes a prima facie case, "the burden shifts to the employer to articulate

5

a legitimate, nondiscriminatory reason for the adverse employment action." Hill v. Lockheed Martin Logistics Mgmt, Inc., 354 F.3d 277, 285 (4th Cir. 2004).  If the employer meets this burden of production, the burden shifts back to plaintiff to prove by a preponderance of the evidence that the employer's stated reason was a mere pretext for discrimination.  Id.

Plaintiff's discrimination claims center on his contention that he was treated less favorably than eight other CSXT conductors who were qualifying in Wilmington at the same time as him.   In his complaint, plaintiff alleges that CSXT required him to complete additional and excessive qualification requirements in comparison to the other conductors.  (Compl., DE # 1, ¶¶ 32, 33.)  Plaintiff also alleges that unlike him, the other conductors were provided a set qualifying schedule, were given access to a recording mechanism to record their qualifying hours, and were paid for the time they spent in qualifying.  (Id. ¶¶ 36, 37.)

As plaintiff has based his allegations completely upon a comparison to employees from a non-protected class, the validity of his prima facie case depends upon whether the comparators are indeed similarly situated.  See Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010).  Therefore, plaintiff has the burden of proving that he was similarly situated "in all relevant respects" to the comparators he relies upon.  Id.  "Such a showing would include evidence that the employees dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  Id.  (alteration in original) (internal quotation marks and citation omitted).  Although a plaintiff's situation need not be identical to that of a coworker, a 'reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases' is required."  Wooten v. Epworth United Methodist Church,

No. 1:06CV778, 2008 WL 5216192, at *6 (M.D.N.C. Dec 11, 2008) (quoting Graham v. Long Island R.R., 230 F.3d 34, 40 (2d. Cir. 2000)).

In this case, plaintiff relies on a comparison with eight other conductors who qualified on the Wilmington territory during the same timeframe as him. By plaintiff's own admission, his "comparators are not similarly situated, they were new hires with ZERO experience in comparison to an all qualified and experienced conductor." (Pl.'s Mem., DE # 60, at 15.) Moreover, CSXT has introduced evidence, which plaintiff has not refuted, that the comparators plaintiff relies upon were all either newly hired trainees or conductors transferred at CSXT's request. (See Setser Declr., DE # 44-6, at 5.) As plaintiff acknowledged during his deposition, CSXT determines whether a conductor is to be compensated for the time he spends qualifying by looking at the conductor's level of seniority and transferee status. (Ismail Dep., DE # 44-2, at 55.) According to the terms of the CBA, new conductor trainees and conductors transferred at CSXT's request are paid for the rides they must take to qualify. (Def.'s Mem. Supp. Mot., Ex. B, DE # 42-5, at 2-3.) By contrast, voluntary transferees, such as plaintiff, are not paid for the time they spend qualifying. (Id. at 3.) Taking these differences into account, the court concludes that the qualifying process of plaintiff's identified comparators was not reasonably close enough to plaintiff's to allow an adequate comparison. Because plaintiff cannot show that the comparators he relies upon were similarly situated to him, he has failed to make out a prima facie case of discrimination.

Alternatively, even if plaintiff could establish a prima facie case of discrimination, CSXT has proffered several legitimate, non-discriminatory reasons for how plaintiff was treated while qualifying. (Smalls Declr., DE # 44-5, at 2-3; Setser Declr., DE # 44-6, at 2-6; Joyner Declr., DE #44-7, at 2-5.) An employee's length of service and level of experience are legitimate, non-

7

discriminatory reasons for a pay differential.  See Ali v. Energy Enterprise Solutions, LLC, 414 F. App'x 531, 531-32 (4th Cir. 2011).  Moreover, due to the pay differential, CSXT had a financial incentive to qualify the other eight conductors first and more quickly than plaintiff who was not paid for his qualifying rides.  See Pauling v. Gates, No. 1:10CV1196, 2011 WL 1790137, at *6 (E.D. Va. May 6, 2011) (recognizing that saving money represented a legitimate, nondiscriminatory reason for employer's denial of employee's request to attend a training program other employees had attended in the past).

The court acknowledges plaintiff's belief that his experience as a conductor warranted him qualifying in a shorter amount of time than newly-hired, less-experienced conductors.  However, "[it] is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff."  Evans v. Techs. Applications & Service Co., 80 F.3d 954, 960-61 (4th Cir. 1996) (internal quotation marks and citation omitted).  By the terms of the CBA, it was within CSXT's discretion in determining the number of qualifying trips plaintiff needed to take in order to demonstrate proficiency on each route.  (DE # 42-5, at 3.)  Even though plaintiff may have taken a longer amount of time to qualify on certain routes than other conductors, the evidence shows that plaintiff's overall qualification time was commensurate with his identified comparators.  (See Smalls Declr., DE # 44-5, ¶ 13; Setser Declr., DE # 44-6, ¶ 25.)  Additionally, CSXT has presented uncontroverted evidence that plaintiff spent less time in unpaid qualifying status than other conductors outside of his protected class who voluntarily transferred to Wilmington.  (See Smalls Declr., DE # 44-5, ¶ 13.)  Plaintiff has simply failed to demonstrate that the legitimate, nondiscriminatory reasons given by CSXT for its actions were pretext for unlawful discrimination.  Therefore, the court concludes that CSXT is entitled to summary judgment on plaintiff's employment discrimination claims.

### ii. Hostile Work Environment Claim (Count 2)

Plaintiff also claims that CSXT subjected him to a hostile work environment in violation of 42 U.S.C. § 1981. To state a hostile work environment claim, plaintiff must show that the alleged harassment was (1) unwelcome, (2) based on his sex or race, (3) sufficiently severe or pervasive to alter the conditions of his employment and create a hostile work environment, and (4) imputable to his employer. Mosby-Grant v. City of Hagerstown, 630 F.3d 326, 334 (4th Cir. 2010) (citation omitted).

To satisfy the third prong of a hostile environment claim, plaintiff must show that the work environment was "not only subjectively hostile, but also objectively so." Bonds v. Leavitt, 629 F.3d 369, 385 (4th Cir. 2011). "That is, a plaintiff must demonstrate that [he] subjectively perceived the environment to be hostile and that 'the conduct was such that a reasonable person in the plaintiff's position would have found the environment objectively hostile or abusive.'" Lauture v. St. Agnes Hosp., 429 F. App'x 300, 306 (quoting E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008)). When determining whether the harassing conduct was objectively severe or pervasive, the court must examine "the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Bonds, 629 F.3d at 385 (quoting Sunbelt Rentals, 521 F.3d at 315). The United States Court of Appeals for the Fourth Circuit has recognized that "plaintiffs must clear a high bar in order to satisfy the severe or pervasive test." Sunbelt Rentals, 521 F.3d at 315.

At his deposition, plaintiff described two incidents with CSXT coworkers that he believed evidenced a hostile work environment. The first incident occurred when a coworker

informed plaintiff that Ron Eason, a CSXT clerk in charge of organizing certain train routes, referred to plaintiff as "the Taliban," and indicated that he gave plaintiff lower paying assignments due to his race. (Ismail Dep., DE # 44-2, at 110.) Plaintiff also testified that Theresa Stiles, a CSXT agent, admitted to him that she had treated him rudely as a direct result of September 11 and her negative perception of Middle Easterners. (Id. at 104-09.)

Plaintiff also bases his hostile work environment claim on the same factual allegations used to support his discrimination claims—his differential treatment during the qualification process. Specifically, plaintiff testified that Smalls and Joyner created problems that made it more difficult for him to complete qualifying. According to plaintiff, Smalls engaged in a pattern of refusing to communicate with him, including not returning telephone calls and text messages, while plaintiff was left to wonder whether he had work or whether he needed to qualify and if so, where. (Id. at 80-84, 128-29.) In addition, plaintiff testified that following the 29 August 2011 meeting with CSXT and UTU representatives to address his discrimination claims, Joyner did not call him to qualify on a grain train until 11 September 2011. (Id. at 91.) He further explained that Joyner required him to qualify on jobs on which other conductors did not have to qualify, unfairly criticized him for not working hard enough, and became angry at him when he refused to work on a job without pay that did not count towards his qualification. (Id. at 87-91.)

Even with all reasonable inferences drawn in plaintiff's favor, the evidence falls short of establishing that the conduct of plaintiff's coworkers was sufficiently severe or pervasive to maintain a hostile work environment claim. A hostile work environment claim cannot rest on discriminatory comments or conduct of which the plaintiff has no direct knowledge. See Belton v. City of Charlotte, 175 F. App'x 641, 656 (4th Cir. 2006). During his deposition, plaintiff

admitted that Eason's derogatory remarks were "not something [he] heard [himself]." (Ismail Dep., DE # 44-2, at 110.) Similarly, there is nothing in the record to indicate that Stile's callous behavior toward plaintiff was so frequent or severe that a reasonable person in plaintiff's position would consider the work environment hostile. When asked about specific complaints against Stiles, plaintiff stated that Stiles was "very unprofessional, loud, [and used] profanity." (Id. at 106.) "[N]ormally petty slights, minor annoyances, and a simple lack of good manners will not" give rise to a hostile environment claim. Burlington N. & Santa Fe R.R. Co., v. White, 548 U.S. 53, 68 (2006). While Stiles's callous behavior toward plaintiff due to her anti-Arab sentiments is troubling, her challenged conduct does not amount to actionable harassment based on race.

As to plaintiff's claims of harassment by his supervisors while he was qualifying in Wilmington, the facts alleged reflect a workplace dispute regarding the qualification process and insensitive behavior by plaintiff's superiors. Despite plaintiff's claim that he was the only conductor who had to qualify on grain trains, he has not come forward with any evidence to support this claim. See Gilliam v. S.C. Dep't of Juvenile Justice, 474 F.2d 134, 142-43 & n. 9 (holding that unsupported, conclusory statements made by plaintiff regarding differential treatment were insufficient to establish a hostile work environment). Smalls and Joyner may have treated plaintiff unfairly by failing to provide him with a set qualification schedule and expecting him to work on an unpaid job that did not count towards his qualifying. However, "rude treatment by supervisors is 'conduct falling short of that required to sustain a hostile work environment [claim].'" Bennett v. CSXT Transp., Inc., 552 F. App'x 222, 227 (4th Cir. 2014) (quoting Baqir, 434 F.3d at 747). Furthermore, criticism regarding an employee's performance does not amount to actionable harassment based on race. See Hawkins v. PepsiCo, Inc., 203

F.3d 274, 282 ("Personality conflicts and questioning of job performance are unavoidable aspects of employment." (internal quotation marks and citation omitted)).

Although plaintiff perceived his work environment to be abusive, he has failed to proffer sufficient evidence to establish he was subjected to an objectively hostile or abusive work environment. Therefore, the court concludes that CSXT is entitled to summary judgment on plaintiff's hostile work environment claim.

### 3. UTU's Motion for Summary Judgment (Counts 8-11)

Plaintiff also alleges that UTU violated Title VII by discriminating against him on the basis of his race, religion, national origin, and color.[4] Plaintiff's discrimination claims against UTU relate to the same factual allegations used to support his employment discrimination claims against CSXT. Specifically, he claims that UTU worked in concert with CSXT in requiring him to complete additional and excessive qualification requirements in an attempt to make him quit his job or transfer from the Wilmington territory. As plaintiff has failed to make prima facie case of discrimination against CSXT, his employer, he similarly fails to make a case for discrimination against UTU. See Beck v. United Food & Commercial Workers Union, Local 99, 506 F.3d 874, 882 (9th Cir. 2007) ("The standard burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, applies to a Title VII action against a union.").

Furthermore, plaintiff failed to name UTU as a party in the discrimination charge he filed with the EEOC. Title VII provides that "a civil action may be brought against [any] respondent named in the [E.E.O.C.] charge." 42 U.S.C. § 2000e-5(f)(1). It is generally held that before a defendant may be properly sued under Title VII, he must first be administratively charged by

---

[4] In count eleven of his complaint, plaintiff alleges that UTU discriminated against him in its capacity as an employer. (DE # 1, at 21.) However, during his deposition, plaintiff acknowledged that he has never been employed by UTU. (Ismail Dep., DE # 44-2, at 194.)

12

being named in a complaint to the EEOC. See Mickel v. S.C. State Employment Service, 377 F.2d 239, 241-42 (4th Cir. 1967). However, courts have recognized an exception to this requirement where the named and unnamed parties have substantially the same identity or have an agency relationship. See Brewster v. Shockley, 554 F.Supp. 365, 368 (W.D. Va. 1983) (collecting cases).

In his EEOC charge of discrimination, plaintiff listed UTU Local 1105 on the line instructing him to name the labor organization that he believed discriminated against him. (DE # 42-9.) Plaintiff has not alleged nor brought forth any evidence that UTU worked in concert with UTU Local 1105 or was involved in the acts giving rise to the charge. Because there is no evidence of an agency relationship between UTU and the local union, plaintiff's discrimination claims against UTU are not properly before the court.

**B. Motion for Extension of Time**

On 20 February 2015, plaintiff filed a motion for extension of time to respond to defendants' reply briefs. (DE # 66.) Without waiting for the court to rule on that motion, plaintiff filed a response entitled "Faisal Ismail's Response to CSXT Transportation, Inc.'s and UTU Reply for Summary Judgment and Submitting Exhibits," on 6 March 2015. (DE # 67.) With his filing, plaintiff submitted as an exhibit a CD containing audio recordings of several conversations he allegedly had with co-workers. (DE # 67-5) Plaintiff has previously admitted that he made these recordings without the participants' knowledge or consent. (Ismail Dep., DE # 44-2, at 118-19.) CSXT filed a motion to strike plaintiff's response on 19 March 2015. (DE # 69.)

"[T]he court generally allows a party to file a sur-reply only when necessary to respond to argument raised for the first time in the reply." Estate of Richard Myers ex. Rel. Myers v.

13

Wal-Mart Stores, Inc., No. 5:09-CV-540-FL, 2011 WL 1366459, at *1 n.1 (E.D.N.C. April 11, 2011). Although such circumstances do not present themselves here, the court considered the substance of plaintiff's response brief in deciding defendants' motions for summary judgment. However, the court did not take into consideration the audio recordings submitted by plaintiff or any transcripts of these recordings in making its determination.

### III.  CONCLUSION

For the reasons stated herein, CSXT's motion to strike, (DE # 69), is DENIED. Defendants' motions for summary judgment, (DE ## 41,43), are GRANTED. Plaintiff's motions to dismiss defendants' motions for summary judgment, (DE ## 56, 59), are DENIED. The Clerk is DIRECTED to enter judgment in favor of defendants and close this case.

This 27 April 2015.

                                                      W. Earl Britt
                                                      Senior U.S. District Judge